# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RUMBER *et al.*,                    :
                                    :
          Plaintiffs,               :     Civil Action No.:     04-1170 (RMU)
                                    :
          v.                        :     Document No.:         34
                                    :
DISTRICT OF COLUMBIA *et al.*       :
                                    :
          Defendants.               :


## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION

## I.    INTRODUCTION

This matter comes before the court on the plaintiffs' second motion for a preliminary

injunction based on the Supreme Court's decision in *Kelo v. City of New London, Connecticut*, --

U.S. --, 2005 WL 1469529 (June 23, 2005).  The plaintiffs, owners and tenants of properties[1]

---

[1]     The plaintiffs are owners and tenants of properties located in the Skyland
        Shopping Center and the adjoining neighborhood.  The following plaintiffs are
        owners of property located in the Skyland Shopping Center or surrounding
        neighborhood: Rose and Joseph Rumber (Skyland Liquors, located at 2648
        Naylor Road, S.E.), Graham and Verna Fields (Fields Records and Alexis Hair
        Gallery, located at 2840 Alabama Avenue, S.E.), Muhtar Ahmadi (New York
        Fried Chicken, located at 2716 Good Hope Road, S.E.), Duk Hea Oh (Beauty
        World, located at 2842 Alabama Ave., S.E.), In Suk Baik (Alabama Express
        Liquors, located at 2846 Alabama Ave., S.E.), and Ingak Lee (Hilltop Cleaners,
        located at 2712 Good Hope Road, S.E.).  The following plaintiffs are tenants or
        merchants of property located in the Skyland Shopping Center or surrounding
        neighborhood: Marion Fletcher (Fletcher's Beauty Salon, located at 2832
        Alabama Ave., S.E.), Boubaker Ben Salah (New York Fried Chicken, located at
        2716 Good Hope Road, S.E.), Muneer Choudhury (Blimpie franchise, located at
        2636 Naylor Road, S.E., and notably signed a ten-year lease for this franchise),
        Quval Le (Beauty Nail, located at 2824A Alabama Ave., S.E.), Son Cha Kang
        (Hilltop Cleaners, located at 2712 Good Hope Road, S.E.), Hartej Sinh (Check
        Cashing, located at 2812 Alabama Ave., S.E.), and Ling Chen (manager at
        Kelly's Carryout, located at 2824 Alabama Ave., S.E., whose parents may be the
        tenants of this establishment).  Pls.' 3d Am. Compl; Pls.' Mot. for Prel. Inj.

referenced in local legislation as being subject to eminent domain, contend that the defendants

are unauthorized to exercise eminent domain and that the plaintiffs will be injured if and when

the defendants exercise eminent domain over their properties.  Because the court concludes that

the Supreme Court's decision in *Kelo* does not disrupt this court's previous analysis rejecting the

plaintiffs' arguments in their first motion for a preliminary injunction and because the plaintiffs

have again failed to shoulder their hefty burden to justify injunctive relief for their new claims in

their third amended complaint, the court denies the plaintiffs' second motion for a preliminary

injunction.


## II.    BACKGROUND

The District of Columbia ("D.C." or the "District") enacted a series of bills regarding the

eminent domain power of the National Capital Revitalization Corporation ("NCRC") and the

Skyland Shopping Center area in Southeast, D.C.  3d Am. Compl. ¶ 2.  The NCRC is a

corporation that is statutorily authorized to acquire property by eminent domain when such action

has been approved by at least two thirds of the D.C. Council.  D.C. Official Code § 2-1219.19.

The power of eminent domain is delegated to the NCRC to assist it in achieving revitalization

goals, although the actual exercise of eminent domain requires Council approval.  *Id*.  On April

5, 2005, the final version of the Act at issue, the National Capital Revitalization Corporation

Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act of 2004

("Skyland Act"), D.C. Legisl. 15-286 (Act 15-679), became effective.  3d Am. Compl. ¶ 3.  The

Skyland Act reflects the Council's findings that, *inter alia*, Wards 7 and 8, including

neighborhoods surrounding the Skyland Shopping Center, are economically depressed and that

the Skyland Shopping Center is a blighting factor.  *Id*.  The Act approves exercising eminent

domain power to acquire and redevelop that area.  *Id*.  On July 13, 2004, several of the owners and tenants of properties subject to the eminent domain authorization set forth in the Skyland Act brought suit to enjoin the defendants from commencing eminent domain proceedings.  The plaintiffs claim that the eminent domain power granted by the legislation violates their Fifth Amendment rights.  *See generally* 3d Am. Compl.  The plaintiffs have amended their complaint three times.  On May 6, 2005, the plaintiffs filed a motion for a preliminary injunction claiming that imminent harm would commence on June 1, 2005.  On May 31, 2005, the court denied the plaintiffs' motion for a preliminary injunction, granted the plaintiffs' motion to file a third amended complaint, and denied without prejudice the defendants' motion to dismiss.  On June 15, 2005, the defendants filed a joint motion to dismiss the plaintiffs' third amended complaint. On June 27, 2005, the plaintiffs filed a second motion for a preliminary injunction based on the Supreme Court's recent decision in *Kelo*.  Also pending before the court is the plaintiffs' motion for an extension of time to file their opposition to the defendants' motion to dismiss.  The court notes that it is not its intent to again grant numerous extensions of time, as the plaintiffs previously requested in responding to the defendants' December 10, 2004 motion to dismiss. The court now turns to the plaintiffs' second motion for a preliminary injunction.

### III.    ANALYSIS

#### A.   Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transportation, Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury.  A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted).  Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.  *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted).  Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly.  In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown.  *National Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

### B. The *Kelo* Decision Does not Disrupt the Court's Decision to Deny the Plaintiffs' First Motion for a Preliminary Injunction

The plaintiffs request that the court re-decide the plaintiffs' first motion for a preliminary injunction in light of the Supreme Court's recent decision in *Kelo*, and include in its analysis the plaintiffs' additional arguments in their second motion for a preliminary injunction.  The court notes that three pages of the plaintiffs' second motion for a preliminary injunction recite verbatim excerpts from the Courts' opinion, concurrence, and dissents.  In essence, the plaintiffs are asking the court to read the *Kelo* decision and apply it to this case without providing the court with additional facts or an application of the law to the facts.  The plaintiffs contend that they are entitled to this second motion for a preliminary injunction as opposed to a motion for reconsideration, in part, because new claims exist since the court denied their first motion for a preliminary injunction.  Pls.' Reply to 2d Mot. for Prelim. Inj. at 8.  Specifically, the court permitted them to file a third amended complaint contemporaneous to denying their first motion for a preliminary injunction.  *See generally* Mem. Op. (May 31, 2005).  The court notes, however, that the plaintiffs relied on their third amended complaint in their first motion for a preliminary injunction.  *See generally* Pls.' Reply to 1st Mot. for Prelim. Inj.

The defendants contend that the plaintiffs' motion is simply an untimely and insufficient

motion for reconsideration merely dressed as a second motion for reconsideration in light of a new Supreme Court case. The defendants further argue that the *Kelo* decision only undermines the plaintiffs' position. The court agrees. The court concludes that the decision in *Kelo* does not disrupt this court's May 31, 2005 memorandum opinion and accompanying order denying the plaintiff's motion for a preliminary injunction. Because it is unnecessary for the court to reassert the identical analysis it issued six weeks ago, the court only briefly touches on the reaffirmation its May 31, 2005 opinion receives from the Supreme Court in *Kelo*.

The question presented in *Kelo* was "whether the city's proposed disposition of [that] property[, for the purpose of economic revitalization,] qualifies as a 'public use' within the meaning of the Takings Clause of the Fifth Amendment to the Constitution." 2005 U.S. LEXIS 5011 at *6. The Court's holding that economic revitalization is indeed a public use and the Court's opinion as a whole bolster this court's denial of the plaintiffs' motion for a preliminary injunction. The Supreme Court, relying on the *Berman* case just as this court did in denying the plaintiffs' first motion for a preliminary injunction, reaffirmed that "transforming a blighted area into a 'well-balanced' community through redevelopment" is a legitimate public use under the Fifth Amendment. *Id.* at *27-28 (quoting *Berman v. Parker*, 348 U.S. 26 (1954)). While the Supreme Court in *Kelo* did discuss the extensive redevelopment plan in that case, the Court by no means set forth a new test to judge the sufficiency of a redevelopment plan.

As this court stated in its May 31, 2005 memorandum opinion, "[t]he Skyland Act reflects the Council's approval for the Skyland Shopping Center redevelopment project as well as its findings regarding the necessity of redevelopment." Mem. Op. at 2 (May 31, 2005). This court concludes now, as it did May 31, 2005, that the purposes of, *inter alia*, revitalization (including economic), removing blighting factors, bettering safety and sanitation, and the like,

are indeed legitimate and further determines that the defendants and the Council could rationally believe that the Skyland Act will promote that objective. *See Kelo*, 2005 U.S. LEXIS at \*35 n.20 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1015 n.18 (1984). The Supreme Court in *Kelo* reaffirmed this court's deference to the legislature and specifically stated that, "[f]or more than a century, our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power." *Id*. at \*24-25. "When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings -- no less than debates over the wisdom of other kinds of socioeconomic legislation -- are not to be carried out in the federal courts." *Id*. at \*34 (quoting *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 242 (1984)). Indeed "[a] constitutional rule that required postponement of the judicial approval of every condemnation until the likelihood of success of the plan had been assured would unquestionably impose a significant impediment to the successful consummation of many such plans." *Id*. at \*35.

The plaintiffs again argue that the taking is unlawful because private parties are being used to accomplish the taking and revitalization. But, the one-to-one transfer admonished in *Kelo* is not present in this case. The public good and public purpose are not vitiated by virtue of private parties being used to carry out and benefitting from redevelopment. *See id*. at \*29-31 & \*31 n.16. The *Kelo* Court succinctly differentiated between the purpose of a taking and the mechanics of a taking to support the use of private developers to carry out the redevelopment plan. *Id*. While the plaintiffs are correct that an injunction is not designed to decide the underlying merits, Pls.' Reply at 8, to justify the extraordinary relief of injunctive relief, the burden is on the plaintiffs to prove, among other things, a substantial likelihood of success on the

merits.  *Mova Pharm. Corp.*, 140 F.3d at 1066.  The plaintiffs indeed already took a first bite at

the juridical apple and they chose where to take that bite.  They cannot take a second bite simply

because they do not like the result of their first.  Furthermore, the court again directs the plaintiffs

to language borrowed from our sister circuit, that "perfunctory and undeveloped arguments, and

arguments that are unsupported by pertinent authority, are waived (even where those arguments

raise constitutional issues)."  *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).  In short,

the *Kelo* decision reaffirms this court's conclusion that the plaintiffs failed to meet their burden

for judicial intervention as extraordinary as a preliminary injunction.  *Kelo* does not salvage the

plaintiffs' already rejected arguments.

### C.  The Plaintiffs Fail to Meet Their Burden for Injunctive Relief Regarding Their Due Process Claims

### 1.  No Substantial Likelihood of Demonstrating Violations of the Fifth Amendment's Due Process Clause

The plaintiffs advance four main arguments in their attempt to demonstrate that the

passage of the Skyland Act violated the Due Process Clause of the Fifth Amendment.  The first

of these claims, although styled as a due process argument,[2] fails to allege any violation of the

Due Process Clause beyond asserting that "the passage of the Skyland Acts and the related

statements made about Skyland by District of Columbia and NCRC officials were achieved

without due process for the plaintiffs and in derogation of their businesses and their reputations."

3d Am. Compl. ¶ 118.  Because the plaintiffs articulate this argument more fully in their fourth

claim for relief, the court addresses it in its consideration of the plaintiffs' due process-related

---

[2]  The Second Claim for Relief of the plaintiffs' third amended complaint is titled "Taking and Due Process Violations of the Fifth Amendment of the United States Constitution." 3d Am. Compl. ¶¶ 113-119.

claim that they were denied proper notice or sufficient opportunity to respond to the proposed

language and the findings prior to the passage of the Skyland Act.  *See id.* ¶¶ 126-127.

In addition to claiming that the procedure by which the Skyland Act was passed violated

the due process requirement, the plaintiffs claim that the defendants violated the Due Process

Clause because the findings in section 2 of the Act are "arbitrary and capricious" and

"unsupported by statistics or other substantive data."  *Id.* ¶ 130.  Finally, the plaintiffs claim that

the passage of the Skyland Act violated the Due Process Clause by failing to meet the

requirements set forth in subsections (a) and (b) of D.C. Code section 2-1219.19.  *Id.* ¶¶ 135-137.

The court now addresses these arguments in turn and concludes that it is unlikely that any of

these claims would persuade the court that the Skyland Act violates the Fifth Amendment's Due

Process Clause.

### a.     The Plaintiffs' Claim that the Skyland Act was Passed Without Giving the Plaintiffs Proper Notice or Sufficient Opportunity to Respond

The D.C. Council held a public hearing on the Skyland Act on April 28, 2004.  The

plaintiffs assert that the version of the bill as it was discussed at the public hearing did not

include the legislative findings in section 2 of the Act.  3d Am. Compl. ¶ 126; *see also* D.C.

Official Code § 2-1219.19(2).  The plaintiffs, however, fail to cite any authority to support their

claim that the public hearing and the legislative process of the Skyland Act are inadequate and

rise to a constitutional violation.[3]  The plaintiffs' skeletal presentation of their arguments

---

[3]     The court notes that the plaintiffs were, in fact, entitled to notice and an opportunity to comment on any act proposed by the D.C. Council.  *See* D.C. Official Code § 2-505(a). Although this provision of the D.C. Administrative Procedure Act ensures the right to be heard on all proposed rules, it makes no mention of a right to be heard at a public hearing on the final version of a proposed rule.

underlies their inability to meet the burden that the court requires to grant their preliminary injunction motion.

The court notes that while it is true that a "requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted), "[t]he Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic Inv. Co. v. State Bd. of Equalization of Colo.*, 239 U.S. 441, 445 (1915). Even assuming *arguendo* that the Council's findings were not incorporated into the bill at the time of the public hearing, the plaintiffs do not contest that they had an opportunity to object to the Skyland revitalization effort. Furthermore, the court notes that it is possible to offend state legislative procedures, yet still be in compliance with constitutional due process requirements. *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County*, 57 F.3d 505, 514 (7th Cir. 1995) (stating that "[a] violation of state law is not a denial of due process of law") (quotations and citations omitted); *see also United States v. 131.68 Acres of Land*, 695 F.2d 872 (5th Cir. 1983) (holding that the government need not provide landowners and lessees any prior notice, hearing, or compensation before exercising its eminent domain power in compliance with the Fifth Amendment).

**b.     The Plaintiffs' Claim that the Skyland Act is Fundamentally Unfair and Unjust**

Next, the plaintiffs contend that the Skyland Act is "fundamentally unfair and unjust" because the section 2 findings are "arbitrary and capricious and . . . unsupported by statistics or other substantive data." 3d Am. Compl. ¶ 130; Pl.'s Mot. at 8-9. Again, the plaintiffs fail to

adequately support their contention.  They provide little evidence of the allegedly pretextual

nature of the section 2 findings.  Similarly, they fail to anchor their allegations of bias and bad

faith with factual support.

    The plaintiffs claim that the crime statistics for the Sixth District decreased from 2003 to

2004.  Pls.' Reply at 11.  While the Skyland Shopping Center is in the Sixth District, that fact

standing alone does not successfully counter the Council's finding that the Skyland Shopping

Center has "fueled crime and attracted criminal elements to the site and is likely to have an

increased incidence of crime in the surrounding neighborhoods."  Skyland Act § 2(a)(6).  Equally

insufficient is the plaintiffs' assertion that plaintiff Rose Rumber received a sanitation rating of

substantial compliance by the D.C. Department of Health, Environmental Health Administration.

Pls.' Reply at 11.  But again, that allegation taken as true does not counter the Council's findings

that, *inter alia*, the Skyland Shopping Center "is a blighting factor in the Hillcrest and nearby

communities[,]" "is characterized by underused, neglected, and poorly maintained properties[,]"

"has been the site of a significant amount of stray and illegally dumped garbage, which the

current owners have not removed in a timely manner and which has created an eyesore and

nuisance in the community[,]" and that the "fragmented and often absentee ownership of the

properties has exacerbated these problems by allowing individual owners to avoid responsibility

for safety and the reduction of crime, trash, and other blighting factors."  Skyland Act §2(4), (5),

(7) & (9).  As the Supreme Court reiterated in *Kelo*, "community redevelopment programs need

not, by force of the Constitution, be on a piecemeal basis -- lot by lot, building by building."

2005 U.S. LEXIS at *21 (quoting *Berman*, 348 U.S. at 35).

    The cases that the plaintiffs cite in their motion for preliminary injunction actually

undercut their due process argument by reinforcing the height of the threshold for invalidating a law on the grounds of arbitrariness or capriciousness.  *See* Pl.'s Mot. at 8-9.  The plaintiffs cite *Eastern Enterprises v. Apfel*, for example, which states that "statutes may be invalidated on due process grounds only in the most egregious of circumstances."  524 U.S. 498, 549-50 (1998).  The plaintiffs also reference Justice Kennedy's concurring opinion in *Lingle v. Chevron U.S.A. Inc.*, which states that the court's decision "does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process."  125 S.Ct. 2074, 2087 (2005) (Kennedy, J., concurring).  Justice Kennedy goes on to state, however, that the "failure of a regulation to accomplish a stated or obvious objective" would inform an inquiry into whether a regulation was arbitrary or irrational.  *Id.*  The plaintiffs' skepticism that the Act will provide the community with the defendants' predicted economic benefit is speculative at best; accordingly, the standard that Justice Kennedy articulates has not been met here.

### c.    The Plaintiffs' Claim that the Skyland Act Fails to Comply with Subsections (a) and (b) of D.C. Code § 2-1219.19

One of the plaintiffs' more puzzling claims is that the Skyland Act is invalid on due process grounds because it allows the defendants to avoid the requirements of subsections (a) and (b) of D.C. Code § 2-1219.19.  3d Am. Compl. ¶¶ 135-137.  Subsection (a), as amended in Law 15-286, requires that any area acquired through eminent domain fall into one of six categories.  D.C. Official Code § 2-1219.19(a).  Subsection (b) requires a 45-day review period prior to the initiation of condemnation proceedings in eminent domain actions.  D.C. Official Code § 2-1219.19(b).

Subsection (c)(1), however, carves out an exception to the requirements contained in subsections (a) and (b).  This exception applies to the property acquired through the Skyland Act

and was incorporated into § 2-1219.19 as part of Law 15-286.  D.C. Law 15-286(3)(c)(1).  The

plaintiffs claim that the fact that Law 15-286 allegedly "single[s] out the Skyland property" in

subsection (c) constitutes a due process violation.  3d Am. Compl. ¶¶ 135.  In typical fashion, the

plaintiffs fail to provide any legal support for this conclusory statement.  The plaintiffs therefore

fail to persuade the court that subsection (c) is unconstitutional.  Given that they also failed to

persuade the court of their previous claim that the Skyland Act was not properly enacted, the

court finds no reason to determine that the law is invalid.

The plaintiffs further claim that the findings in section 2 of the Skyland Act are biased

and pretextual, and that "a preliminary injunction should be granted to permit this Court the

opportunity to address the underlying merits of plaintiffs' challenges" to those findings.  3d Am.

Compl. ¶¶ 130-131; Pl.'s Reply at 12.  But because the plaintiffs have not persuaded the court

that the legislation was not properly enacted, the court's discretion in ruling on the propriety of

specific provisions of that legislation is extremely limited.  *See Berman*, 348 U.S. at 32 (stating

that "subject to specific constitutional limitations, when the legislature has spoken, the public

interest has been declared in terms well-nigh conclusive.  In such cases the legislature, not the

judiciary, is the main guardian of the public needs").  The evidence that the plaintiffs present in

support of the preliminary injunction does not rise to the high threshold required to override the

presumption that legislation that has already been enacted is valid.  For the foregoing reasons, it

is not likely that the plaintiffs could succeed on the merits of the case by demonstrating a

violation of their due process rights.

### 2.   Irreparable Injury to Plaintiffs, Substantial Injury to Interested Parties, Public Interest Furthered by Injunction

For the reasons set forth in this court's May 31, 2005 memorandum opinion denying the

plaintiffs' first motion for a preliminary injunction, the court concludes that the plaintiffs failed to demonstrate (1) that they will suffer irreparable injury in the absence of an injunction and (2) that an injunction would not substantially injure other parties.  Mem. Op. at 15-18.

The fourth prong of the injunction inquiry, which addresses whether the public interest would be furthered by the issuance of an injunction is, however, slightly altered by the due process arguments in the plaintiffs' second motion for a preliminary injunction.  As the plaintiffs correctly point out in their reply to the defendant's opposition, protecting parties' constitutional rights advances the interests not only of the parties to the action, but of the general public as well.  Pls.' Reply at 7.  Thus, a finding of a due process violation would present an important public interest argument in favor of issuing the injunction.  But, because the public interest factor is the only prong that weighs in the plaintiffs' favor, it is insufficient in and of itself to justify an injunction.  *CityFed Fin. Corp.*, 58 F.3d at 747.


## IV.   CONCLUSION

It is this 19th day of July 2005, that the court states all these reasons for its denial of the plaintiffs' second motion for a preliminary injunction.  An order directing the parties in a manner consistent with this Memorandum Opinion was issued the 14th day of July 2005.


                                        RICARDO M. URBINA
                                        United States District Judge