## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROSE RUMBER *et al.*,                          :
                                               :
                    Plaintiffs,                :      Civil Action No.:      04-1170 (RMU)
                                               :
                    v.                         :      Document Nos.:         55, 57, 63
                                               :
DISTRICT OF COLUMBIA *et al.*,                 :
                                               :
                    Defendants.                :

### MEMORANDUM OPINION

**DENYING THE PLAINTIFFS' MOTION TO FILE A FOURTH AMENDED COMPLAINT; DENYING THE PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT; GRANTING THE DEFENDANTS' MOTION DISMISS THE THIRD AMENDED COMPLAINT; GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**

## I.    INTRODUCTION

This matter comes before the court on the plaintiffs' motion to file a fourth amended complaint,  the plaintiffs' motion to enforce the settlement agreement, the defendants' motion to dismiss the third amended complaint and the defendants' motion for summary judgment.  The plaintiffs, owners and tenants of properties known as the Skyland Shopping Center, contend that legislation ("the Skyland legislation") authorizing the defendants, the District of Columbia ("the District" or "D.C.") and the National Capital Revitalization Corporation ("NCRC"), to exercise eminent domain over the plaintiffs' property is unconstitutional.  The plaintiffs request leave to amend their complaint a fourth time to add a claim to enforce a settlement agreement allegedly made between plaintiffs Rose and Joseph Rumber ("Rumber plaintiffs")  and the defendants, to

---

[1]     Although the defendants filed one motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), because the parties submitted evidence outside the pleadings in support of the Rule 12(b)(6) arguments, the court treats the Rule 12(b)(6) portion of the defendants' motion as a motion for summary judgment.  *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (holding that the court shall treat a Rule 12(b)(6) motion to dismiss as one for summary judgment if "matters outside the pleading are presented to and not excluded by the court").

note the filing of condemnation actions in the D.C. Superior Court and to reflect that the D.C.

Council ("Council") has repealed the legislation that created the NCRC. The Rumber plaintiffs

seek enforcement of an unsigned settlement agreement allegedly entered into with the defendants

prior to the dissolution of the NCRC. The defendants move for dismissal of the third amended

complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the court

should abstain from hearing the claims of certain plaintiffs, that other plaintiffs have no standing,

that the claims of all the plaintiffs are moot, and, in any event, that the takings authorized by the

Skyland legislation are for a public purpose. Because the court determines that the new claims

and information in the proposed fourth amended complaint are futile, that the alleged settlement

agreement is unenforceable, that it lacks jurisdiction to hear certain claims and that the takings at

issue are for a public use, the court denies the plaintiffs' motion to amend the complaint, denies

the plaintiffs' motion to enforce the settlement agreement, grants the defendants' motion to

dismiss and grants the defendants' motion for summary judgment.


## II.    FACTUAL & PROCEDURAL BACKGROUND[2]

Beginning in 2004, D.C. enacted a series of bills establishing and defining the eminent

domain power of the NCRC with regard to the Skyland Shopping Center in Southeast D.C. 3d

Am. Compl. ¶¶ 2-4. This legislation authorized the NCRC to acquire property by eminent

domain, when at least two-thirds of the Council has approved such action, to assist the NCRC in

achieving D.C.'s revitalization goals. D.C. CODE § 2-1219.19 (repealed).

On July 13, 2004, the plaintiffs brought suit to enjoin the defendants from commencing

---

[2]    The court's Memorandum Opinion dated May 31, 2005 contains a more detailed discussion of the history of this case. *See* Mem. Op. (May 31, 2005) at 2-4.

eminent domain proceedings. *See generally* Compl. The plaintiffs filed a motion for a preliminary injunction on May 6, 2005. The court denied the motion because no taking and denial of just compensation had yet occurred; the plaintiffs had demonstrated no irreparable and substantial injury; and an injunction would impede the public interest. Mem. Op. (May 31, 2005) at 6-19. The plaintiffs filed another motion for a preliminary injunction on June 27, 2005, which the court again denied for the same reasons. Mem. Op. (July 19, 2005). On December 12, 2005, the court granted the defendants' motion to dismiss the third amended complaint, determining that the plaintiffs' claims were not ripe because no taking had occurred. Mem. Op. (Dec. 12, 2005). The plaintiffs filed a notice of appeal, and the Circuit remanded the case to allow the court to address the plaintiffs' public use argument. *Rumber v. District of Columbia*, 487 F.3d 941, 944-45 (D.C. Cir. 2007). The defendants renewed their motion to dismiss the third amended complaint in November 2007, arguing that the court should dismiss the complaint on the grounds of abstention, standing, mootness or because the defendants have a proper public purpose for acquiring the property. *See generally* Defs.' Renewed Mot. to Dismiss 3d Am. Compl. ("Defs.' Mot. To Dismiss"). On January 6, 2008, the plaintiffs filed a motion for leave to file a fourth amended complaint on the grounds that the law creating the NCRC was repealed and that the defendants failed to honor a settlement agreement with the Rumber plaintiffs. *See generally* Pls.' Mot. for Leave to File 4th Am. Compl. ("Pls.' Mot. to Amend"). Lastly, on January 30, 2008, the Rumber plaintiffs filed a motion to enforce the disputed settlement agreement. *See generally* Pls.' Mot. to Enforce. The court now addresses each of these motions.

### III.    ANALYSIS

**A.    The Court Denies the Plaintiffs' Motion to File a Fourth Amended Complaint**

**1.    Legal Standard for a Motion for Leave to Amend the Complaint**

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). According to decisions of this circuit, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss. *James v. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000) (citing FED. R. CIV. P. 15(a)). If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer. 6 FED. PRAC. & PROC. 2d § 1481. Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15. *James*, 229 F.3d at 283; *Bowden v. United States*, 176 F.3d 552, 555 (D.C. Cir. 1999); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990).

Once a responsive pleading is served, however, a plaintiff may amend the complaint only by leave of the court or by written consent of the adverse party. FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave lies in the sound discretion of the district court. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*,

371 U.S. at 182.  Denial of leave to amend therefore constitutes an abuse of discretion unless the

court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory

motive, undue prejudice or repeated failure to cure deficiencies by previous amendments.  *Id.*;

*Caribbean Broad. Sys.*, 148 F.3d at 1083.

  Denial of leave to amend based on futility is warranted if the proposed claim would not

survive a motion to dismiss.  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir.

1996).  An amended complaint is futile if it merely restates the same facts as the original

complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a

legal theory or could not withstand a motion to dismiss.  *Robinson v. Detroit News, Inc.*, 211 F.

Supp. 2d 101, 114 (D.D.C. 2002) (quoting 3 FED. PRAC. 3d § 15.15[3]); *Willoughby v. Potomac

Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of

leave to amend given the "little chance" that plaintiff would succeed on his claim).

Rule 15(a) governs the amendment of pleadings, stating generously that "leave [to amend] shall

be freely given when justice so requires," FED. R. CIV. P. 15(a), and "instructs the [d]istrict

[c]ourt to determine the propriety of amendment on a case by case basis." *Harris v. Sec'y,

United States Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997).  Whether to grant or

deny leave to amend rests in the district court's sound discretion.  *Foman v. Davis*, 371 U.S. 178,

182 (1962).  Such discretion is not unlimited, however, for it is an "abuse of discretion" when a

district court denies leave to amend without a "justifying" or sufficient reason.  *Id.*; *Firestone v.

Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Reasons that justify a denial of leave to amend

include undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice

to the opposing party, and futility of amendment.  *Foman*, 371 U.S. at 182; *Richardson v. United*

*States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).

Courts require a sufficient basis for denial of leave to amend because the purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome." *Foman*, 371 U.S. at 181-82 (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Under Rule 15(a), the non-movant generally carries the burden in persuading the court to deny leave to amend. *Cf. Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981) (endorsing exceptions to the general rule that the burden of persuasion rests with the non-movant in the Rule 15(a) context); *see also Gudavich v. District of Columbia*, 22 F. App'x 17, 18 (D.C. Cir. 2001) (noting that the non-movant "failed to show prejudice from the district court's action in allowing the [movant's] motion to amend") (unpublished decision).

### 2.   The Plaintiffs' Proposed Fourth Amended Complaint Would Be Futile

The plaintiffs seek to file a fourth amended complaint to add a claim to enforce an alleged settlement agreement and update their other claims based on the fact that the Skyland legislation has been repealed. *See* Pls.' Mot. to Amend, Ex. 1 ("Proposed 4th Am. Compl."). The defendants argue that the amendments are futile because those stemming from the repealing of the Skyland legislation do not substantively change any of the plaintiffs' claims and because the alleged settlement agreement is unenforceable. Defs.' Opp'n to Pls.' Mot. to Amend[3] at 1-5.

---

[3]   In their opposition to this motion, the defendants allege that claims three through five of the plaintiffs' proposed fourth amended complaint are new claims. In reviewing the third amended complaint the court determines that count four in the new amended complaint is addressed in count four of the third amended complaint, and is therefore, not a newly proposed claim. *Compare* Proposed 4th Am. Compl. ¶¶ 140-144, *with* 3d Am. Compl. ¶ 127.

The plaintiffs contend simply that amendment is "necessary and in the interest of justice."  Pls.'
Mot. to Amend at 2.

In the third claim of the proposed fourth amended complaint the plaintiffs allege that the
statutory authority under which the defendants have acted is called into question because the
Council repealed the Skyland legislation.  Proposed 4th Am. Compl. ¶¶ 136-39.  The plaintiffs
do not explain how the repealing of the Skyland legislation, which dissolved the NCRC and
turned over all rights and responsibilities to D.C., would alter or lessen the statutory authority of
D.C. to exercise its eminent domain powers.

D.C. has properly transferred authority from the NCRC to itself.  *See, e.g.*,  D.C. CODE §
2-1225.01(a) (stating that "the Mayor shall succeed to the powers, duties, and responsibilities of
the boards of directors of the NCRC"); D.C. CODE  § 1225.02 (a)(1) (transferring all of the
NCRC's contracts to D.C.'s contracting and procurement system); D.C. CODE  § 2-1225.13
(allowing the Mayor to enter into a contract in which NCRC started the initial procurement
process).  D.C. CODE  § 2-1225.41(a) specifically states that the repealing of the Skyland
legislation "shall not impair or affect the validity of the acquisition by the NCRC . . . of any
property nor shall the repeal affect the authority under which properties were previously taken,
or for which condemnation proceedings were initiated."  *See also* D.C. CODE  § 2-1225.41(b)
(stating that "[c]ondemnation proceedings initiated by the NCRC . . . may be continued . . . by
the Mayor . . . and the Mayor may rely upon the authority pursuant to which the NCRC . . . acted
as well as the findings previously made by the Council and by the NCRC"); D.C. CODE  2-
1225.42(c) (declaring that "[t]he Mayor may exercise eminent domain . . . to acquire properties
in the Skyland Eminent Domain Area for the purpose of redeveloping the Skyland Shopping

Center"). Accordingly, the court does not question D.C.'s authority to act under the mandate previously granted to the NCRC, and the third claim is also futile.

The fifth claim in the proposed fourth amended complaint is one to enforce a settlement agreement between the Rumber plaintiffs and the defendants. *Id.* at ¶¶ 145-47. The Rumber plaintiffs also filed a motion to enforce the settlement agreement, which the court denies, *infra* Part III.B, rendering this claim futile as well. Because all of the newly proposed amendments to the plaintiffs' complaint are futile, the court denies the motion to amend the complaint.

### B. The Court Denies the Rumber Plaintiffs' Motion to Enforce the Settlement Agreement

The Rumber plaintiffs allege that they entered into a settlement agreement with the NCRC. Pls.' Mot. to Enforce at 1. They attach to their motion an unsigned document entitled "Settlement Agreement" that lays out an agreement between the NCRC[4] and the Rumber plaintiffs for the sale of the Rumbers' leasehold interest in Skyland Liquors. Pls.' Mot. to Enforce, Ex. 1 ("Agreement").[5] The defendants argue that the Agreement is unenforceable as it is not signed and therefore violates the statute of frauds. Defs.' Opp'n to Mot. to Enforce at 1-2. In their reply the plaintiffs correctly point out that there are several exceptions to the statute of frauds, Pls.' Reply to Defs.' Opp'n to Pls.' Mot. to Enforce ("Reply to Mot. to Enforce") at 1; however, they fail to explain how any one of those exceptions applies in this instance. Instead,

---

[4]     The RLA Revitalization Corporation ("RLARC") was also named as a party to the Agreement. Pls.' Mot. to Enforce, Ex. 1 ("Agreement"). The RLARC was a subsidiary of the NCRC and is not a party to this suit. D.C. CODE § 2-1219.31 (2001).

[5]     The court notes that there are two un-enumerated exhibits attached to the Rumber plaintiffs' motion to enforce the settlement agreement. For the sake of clarity the court will refer to the Settlement Agreement as Exhibit 1 and the Kerr e-mail as Exhibit 2.

the plaintiffs baldly state that "[t]his settlement agreement is not a contract for the sale of real estate, so the statute of frauds should not apply." *Id.* at 2.

Furthermore, the plaintiffs' motion does not address the fact that *neither* party signed the Agreement, nor does it explain why the scheduled signing did not occur. *See generally* Pls.' Mot. to Enforce. The plaintiffs' two and one half page motion simply cites, without meaningful analysis, authority supporting their contention that courts favor settlement agreements, *id.* at 2-3 (citing *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1015 (D.C. Cir. 1985)) and that an enforceable contract can exist when the parties have agreed to all the material terms with the intent to be bound, *id.* at 3 (citing *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001)). The defendants respond by asserting that the Agreement nonetheless violates the statute of frauds because it is not signed. Defs.' Opp'n to Mot. to Enforce at 2.

In order to be enforceable, the Agreement must comply with the law, in this case the statute of frauds, *see Samra v. Shaheen Bus. & Inv. Group, Inc.*, 355 F. Supp. 2d 483, 497 (D.D.C. 2005) (stating that "oral settlement agreements are not enforceable in . . . the District of Columbia where the terms of the agreement bring it within the prohibitions of the applicable statute of frauds" (internal citation omitted)). The statute of frauds in D.C. states that "[a]n action may not be brought . . . upon a contract or sale of real estate[ or] of any interest in or concerning it . . . unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged." D.C. CODE § 28-3502. As a result, the plaintiffs' reliance on *Mahoney* is misplaced because the Agreement in that case did not fall within the statute of frauds. *See* D.C. CODE § 28-3502. To determine whether this Agreement falls within the statute of frauds, the court looks to its terms: "[t]he NCRC Entities and the Rumbers have reached an agreement on the total

amount to be paid for the *acquisition of their leasehold interest in the Property*," Agreement ¶ E (emphasis added); "the Rumbers hereby assign to NCRC all rights, interest, and obligation of the Rumbers as tenants *under any lease involving all or any portion of the property*," *id.* ¶ 2 (emphasis added); and "the Rumbers shall execute the license agreement . . . [which] will operate as a month to month lease whereby the Rumbers will continue to occupy the Property, operate the Business, and pay all operating expenses for the Business until such time that they vacate the Property," *id.* at ¶ 3.  The language of the Agreement, makes it clear that it was a contract concerning real estate, namely the sale of a leasehold interest, and the statute of frauds applies.  *See* D.C. CODE  § 28-3502 (stating that the statute of frauds applies to "a contract or sale of real estate, *or any interest in or concerning it*" (emphasis added)); 9 WILLISTON ON CONTRACTS § 25:10 (noting that "contracts subject to the Statute of Frauds as involving leases of real property include: . . . a promise to assign a leasehold interest").  Because the court holds that the statute of frauds applies, the Agreement is unenforceable as a result of the fact that it was not signed by a representative for the defendants.[6]  Accordingly the court denies the plaintiffs' motion to enforce the settlement agreement.

---

[6]     The plaintiffs make much of the defendants' contention that Ted Risher, the representative who negotiated the Agreement on behalf of the defendants, did not have authority to bind the defendants.  Reply in Supp. of Mot. to Enforce at 3-5.  Because the court has determined that the alleged settlement agreement violates the statute of frauds, the question of Risher's settlement authority is moot.  To the extent the plaintiffs are arguing that Risher's e-mail exchange with the plaintiffs' attorney, Elaine Mittleman, Pls.' Reply to Defs.' Opp'n to Pls.' Mot. to Enforce, Ex. 2 ("Risher e-mail"), is a "memorandum or note" sufficient to qualify as a writing to satisfy the statute of frauds, *see* D.C. CODE  § 28-3502, this proposition fails because the e-mail provides no description of the property.  *see Apostolides v. Colecchia*, 221 A.2d 437, 438 (D.C. App. 1966) (holding that "a contract for the sale of real estate is valid and enforceable only when it is in writing and there is sufficient description of the property to be sold, the price to be paid, and the names of the parties to the transactions"); *Clay v. Hanson*, 536 A.2d 1097, 1102 (D.C. 1988) (noting that "a property description which refers to a street address is often sufficient to satisfy the statute of frauds").

### C.   The Court Grants the Defendants' Renewed Motion to Dismiss the Third Amended Complaint

### 1.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to

the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir.

1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has

jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v.

Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

The D.C. Circuit has noted that courts should consider Rule 12(b)(1) jurisdictional

challenges before Rule 12(b)(6) challenges.  *United States ex rel. Settlemire v. District of

Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler &

Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).  Put simply:

> Where . . . the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P.,
> as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge
> first since if it must dismiss the complaint for lack of subject matter jurisdiction, the
> accompanying defenses and objections become moot and do not need to be
> determined."

*Kreindler & Kreindler*, 985 F.2d at 1155-56 (citing 5 FED. PRAC. & PROC. § 1350); *see also Bell

v. Hood*, 327 U.S. 678, 682 (1946) (holding that a motion to dismiss for failure to state a claim

may be decided only after finding subject matter jurisdiction); *but cf. Jones v. Georgia*, 725 F.2d

622, 623 (11th Cir. 1984) (noting that "exceptions" to this "generally preferable approach" exist

when a plaintiff's claim has no plausible foundation or is clearly foreclosed by Supreme Court

precedent).

### 2.    Standing

#### a.    Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or

controversies.  U.S. CONST. art. III, § 2, cl. 1.  These prerequisites reflect the "common

understanding of what it takes to make a justiciable case."  *Steel Co. v. Citizens for a Better

Env't*, 523 U.S. 83, 102 (1998).  Consequently, "a showing of standing is an essential and

unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Put slightly differently, "Article III standing must be resolved as threshold matter." *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) (citing *Steel Co.*, 523 U.S. at 96-102).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing.  *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam).  The extent of the plaintiff's burden varies according to the procedural posture of the case.  *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice.  *Id.*  On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true."  *Id.* at 899 (citing FED. R. CIV. P. 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test.  *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560).  First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical.  *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103).  Second, the injury must be fairly traceable to the governmental conduct alleged.  *Id.*  Finally, it must be likely that the requested relief will redress the alleged injury.  *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative [,which is] the ultimate label for injuries too implausible to support

standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).  Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

### b.    The Plaintiffs Have Standing

The defendants argue that plaintiffs Fields, Salah, Kang, Lee and Chen lack standing because they have already sold their property to the NCRC (Fields and Lee); they are merely employees with no property rights (Salah and Chen); and the lease under which they operated as a tenant provided for termination upon sale in lieu of condemnation and forfeiture of any just compensation claim to the landlord (Kang).  Defs.' Mot. to Dismiss at 10-12.  There are, however, nine other plaintiffs and, as the plaintiffs correctly point out, Pls.' Opp'n at 10, a finding that at least one of them has standing is sufficient, *Doe v. Bolton*, 410 U.S. 179, 189 (1973) (concluding that the court "need not pass upon the status of these additional appellants in this suit, for the issues are sufficiently and adequately presented by Doe and the physician-appellants, and nothing is gained or lost by the presence or absence of the [others]"); *Railway Labor Executives' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993) (holding that "if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case" (internal citation omitted)).  Because it is undisputed that at least one of the plaintiffs has standing, Reply in Supp. of Mot. to Dismiss at 3-5, and because the number of plaintiffs bringing a public use claim does not affect the merits of the claim, the court denies the defendants' motion to dismiss based on lack of standing.

### 3.   Ripeness

#### a.  Legal Standard for Ripeness

Article III of the Constitution limits the jurisdiction of federal courts to cases or

controversies.  U.S. CONST. ART. III, § 2, cl. 1.  The case-or-controversy requirement reflects the

"common understanding of what it takes to make a justiciable case."  *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 102 (1998).  Among the various doctrines developed by the courts to

test the fitness of controversies for judicial resolution is the ripeness doctrine.  *Wyo. Outdoor*

*Council v. U.S. Forest Service*, 165 F.3d 43, 48-49 (D.C. Cir. 1999).

The ripeness doctrine asks "whether the case has been brought at a point so early that it is

not yet clear whether a real dispute to be resolved exists between the parties."  15 FED. PRAC. 3d

§ 101.70[2].  Reflecting both constitutional and prudential considerations, the doctrine "is

designed to prevent the courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements over administrative policies and also to protect the agencies

from judicial interference until an administrative decision has been formalized and its effects felt

in a concrete way by the challenging parties."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 733 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Reno*

*v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (stating that "[the] ripeness doctrine is

drawn both from Article III limitations on judicial power and from prudential reasons for

refusing to exercise jurisdiction").

Toward that end, a court must examine whether a dispute is fit for judicial review and

whether withholding court consideration would cause hardship to the parties.  *Ohio Forestry*

*Ass'n, Inc*, 523 U.S. at 733; *Wyoming*, 165 F.3d at 48.  To measure fitness, the court looks to

"whether [the issue] is purely legal, whether consideration of the issue would benefit from a

15

more concrete setting, and whether the agency's action is sufficiently final." *Atl. States Legal Found. v. Envtl. Prot. Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003).  If a claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," it is not ripe for adjudication.  *Id.*  As for hardship, the court looks to see whether the party can show that it will suffer injury in the interim.  *Id.*

### b. Plaintiffs Oh, DeSilva and Rose and Joseph Rumber's Uniform Relocation Assistance and Real Property Acquisition Policy Act Claim is Not Ripe

Plaintiffs Oh, DeSilva and Rose and Joseph Rumber contend that their claims under the Uniform Relocation Assistance and Real Property Acquisition Policy Act ("URA"), 42 U.S.C. §§ 4621 *et seq.*, are not at issue in the Superior Court and, therefore, must be heard here, Pls.' Opp'n to Defs.' Mot. to Dismiss at 9-10.  To this argument the defendants respond that the plaintiffs have not exhausted their administrative remedies and cannot yet bring this claim. Defs.' Reply to Pls.' Opp'n to Mot. to Dismiss ("Reply in Support of Mot. to Dismiss") at 3. The plaintiffs provided no response to this allegation.  "The Court's only jurisdiction over a controversy as to payment of benefits under the URA is pursuant to the Administrative Procedure Act ('APA') and the APA requires exhaustion of administrative remedies." *United States v. 249.12 Acres of Land, More or Less, in Stephens & Cotton Counties, State of Okl.*, 414 F. Supp. 933, 934 (D.C. Okl. 1976); *see also Boyd v. Browner*, 897 F. Supp. 590, 593 (D.D.C. 1995) (dismissing plaintiffs' URA claim because they failed to exhaust their administrative remedies by not appealing their initial relocation assistance determinations).  Because the plaintiffs have failed to exhaust the administrative remedies for their URA claim, they cannot raise that claim now, and that claim is dismissed.

### 4.   Equitable Restraint

#### a.   Legal Standard for Equitable Restraint Under the *Younger* Doctrine

In *Younger v. Harris*, 401 U.S. 37 (1971) the Supreme Court articulated a doctrine of equitable restraint based on principles of comity and federalism.  The Court defined this notion of "federalism" as

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44.

To further these goals, when an issue of subject-matter jurisdiction over a state proceeding arises, a federal court must apply a three-part test to determine whether it should dismiss the case based on the *Younger* doctrine: "first, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; [and] third, the proceedings must afford adequate opportunity in which to raise the federal claims." *Hoai v. Sun Ref. & Mktg. Co*., 866 F.2d 1515, 1518 (D.C. Cir. 1989) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Even if the three-part test dictates that the court dismiss the case, the court must also consider whether one of the exceptions is present, such as a showing of bad faith, harassment or an exceptional circumstance that would warrant exercising federal jurisdiction.  *Younger*, 401 U.S. at 53-4.  An example of an exceptional circumstance is a statute that "flagrantly and patently" violates a constitutional provision.  *See id*. at 53 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)).

17

While *Younger* involved a criminal proceeding, the Supreme Court has extended this doctrine to cases in which a state government is a party in state civil litigation, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975), and to civil proceedings that involve important state interests even if the state government is not a party, *Juidice v. Vail*, 430 U.S. 327, 335-36 (1977). The Supreme Court has underscored the application of the *Younger* doctrine to cases in which federal courts should defer to state courts in matters of state court proceedings. *See generally Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

   **b.    Applying the *Younger* Doctrine, the Court Dismisses the Claims of Plaintiffs Oh, DeSilva and Rose and Joseph Rumber**

The defendants argue that the court should dismiss the claims of plaintiffs Oh, DeSilva and Rose and Joseph Rumber as they are all involved in eminent domain cases currently pending in the Superior Court for the District of Columbia ("Superior Court"). Defs.' Mot. to Dismiss at 8-10. The plaintiffs disagree that their claims should be dismissed at the federal level. Pls.' Opp'n to Defs' Mot. to Dismiss at 7-10. Plaintiffs Oh and DeSilva first argue that the state proceedings do not provide an adequate opportunity to raise their federal claims because they have not had an adequate opportunity to make a public use argument in their Superior Court cases. Pls.' Opp'n to Defs' Mot. to Dismiss at 7. The defendants submit that, as the Superior Court has ruled specifically on the public use issue, the plaintiffs cannot contend that they were not provided an opportunity to raise that claim. Supplemental Mem. in Supp. of Defs.' Mot. to Dismiss at 1. On June 4, 2008, however, the Superior Court issued an order resolving the public use issue. The Superior Court "conclude[d] that the [Council] deliberated thoroughly and acted rationally and with reasonable foundation, rather than pretextually, when it decided the Skyland redevelopment would serve numerous public purposes." Supplemental Mem. in Supp. of Defs'

Mot. to Dismiss, Ex. C ("Superior Ct. Omnibus Order") at 12.  Although the court realizes that the Superior Court Omnibus Order was issued well after the plaintiffs filed their opposition to the defendants' motion to dismiss, the fact remains that the plaintiffs have not only had an opportunity to raise the public use claim in Superior Court, but that court has decided the issue. Because the Superior Court Omnibus Order made a final determination of the this argument, it will not be relitigated here.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) (holding that "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").

Second, the Rumber plaintiffs argue that the defendants acted in bad faith by adding them to the Superior Court litigation more than two years after the District filed the original condemnation complaint.  Pls.' Opp'n to Defs.' Mot. to Dismiss at 8.  The defendants contend that they were simply complying with D.C. rules and not acting in bad faith.  Reply in Support of Mot. to Dismiss at 2.  The Superior Court Omnibus Order also defeats the Rumber plaintiffs' allegation that the District acted in bad faith when it added the Rumbers to the Superior Court action.  The Superior Court Rules of Civil Procedure require that a plaintiff in a condemnation proceeding initially join as defendants all individuals known to have an interest in the property and, prior to any compensation hearing, join "all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records."  D.C. SCR-CIV. RULE 71A(c)(2).  Specifically addressing the Rumber plaintiffs' argument that the District intentionally delayed bringing them into the action, the Superior Court determined that "[t]he Rumbers have presented no evidence that they were actually known to NCRC or The District when the original complaint was filed."  Superior Ct. Omnibus Order at 3.  The Superior Court determination that the District did not act in bad faith stands and will not be relitigated

here.  *See Allen v. McCurry*, 449 U.S. at 94.  Accordingly, the plaintiffs are not entitled to the bad-faith exception to the *Younger* doctrine.

Although the parties do not dispute this issue, the court notes that the use of eminent domain is an important state interest.  *Berman v. Parker*, 348 U.S. 26, 33-36 (1954) (concluding that D.C.'s use of eminent domain for economic development is a legitimate "means to an end"); *Aaron v. Target Corp.*, 357 F.3d 768, 777 (8th Cir. 2004) (stating that "[e]minent domain proceedings have long been recognized as an important state interest").  Therefore, because there are "ongoing state proceedings that are judicial in nature . . . the state proceedings . . . implicate important state interests . . . [and] the proceedings . . . afford [the plaintiffs] adequate opportunity in which to raise [their] federal claims," the *Younger* doctrine applies and the remaining claims of plaintiffs Oh, DeSilva and Rose and Joseph Rumber are dismissed.  *Hoai*, 866 F.2d at 1518.

### 5.    Mootness

#### a.  Legal Standard for Mootness

Under Rule 12(b)(1), a party may move to dismiss a case on grounds of mootness. *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995); *Am. Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1308 (D.D.C. 1995).  Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues.  *Flast v. Cohen*, 392 U.S. 83, 96 (1968).  "The doctrine of mootness is a logical corollary of the case or controversy requirement[.]"  *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90 (D.C. Cir. 1986).  In cases in which challenged conduct ceases and "there is no reasonable expectation that the wrong will be repeated, . . . it becomes impossible for the court to grant any effectual relief whatever to the prevailing party,

and any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  Accordingly, a court may not rule on the merits of a case in which the claim for relief is moot.

Courts must evaluate mootness "through all stages" of the litigation in order to ensure that a live controversy remains. *21st Century Telesis Joint Venture v. Fed. Commc'n Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) and *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  As a result, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *City of Erie*, 529 U.S. at 287 (internal quotations omitted).  An intervening event may render a claim moot if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.  *Pharmachemie B.V. v. Barr Labs, Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992).  A case is not moot, however, so long as any single claim for relief remains viable, as the remaining live issues satisfy the case-or-controversy requirement.  *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C. Cir. 1991) (internal quotations and citations omitted).  The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden.  *County of Los Angeles v.*

*Davis*, 440 U.S. 625, 631 (1979); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458-59 (D.C. Cir. 1998).

### b.   The Court Dismisses as Moot Claims of Plaintiffs Fields and Lee Only

The defendants contend that all of the plaintiffs' claims are moot because the defendants have acquired title to every property in question by either eminent domain or sale.  Defs.' Mot. to Dismiss at 12-13.  The plaintiffs counter that questions remain as to whether the defendants have title, at least by eminent domain.  Pls.' Opp'n to Defs.' Mot. to Dismiss at 13-15.  With the exception of plaintiffs Fields and Lee, neither side offers any documentation to support these assertions.  Thus, the court determines that the defendants have not met the "heavy burden" of establishing that the claims of plaintiffs Fletcher, Salah, Ahmadi, Choudhury, Le, Baik, Kang, Singh and Chen[7] are moot.  *See County of Los Angeles*, 440 U.S. at 631.  Conversely, the defendants have provided sales agreements in which plaintiffs Lee and Fields have sold their property to the NCRC.  *See* Defs.' Mot. to Dismiss, Ex. C & Ex. D.  Because plaintiffs Lee and Fields do not challenge the validity of these documents, *see generally* Pls.' Opp'n to Mot. to Dismiss at 13-15, the defendants have met their burden of showing that these plaintiffs no longer have an interest in the subject properties, *County of Los Angeles*, 440 U.S. at 631, and consequently, their claims are moot.  Accordingly, the court dismisses as moot the claims of plaintiffs Fields and Lee only.

---

[7]     The court has already determined that it will not exercise jurisdiction over the claims of plaintiffs DeSilva, Oh and Rose and Joseph Rumber.  *See supra* Part III.C.4.b.

### D.   The Court Grants the Defendants' Motion for Summary Judgment

#### 1.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and [. . .] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329,

338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central

purpose of the summary judgment device, which is to weed out those cases insufficiently

meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

2.   **Because the Taking Was for a Valid Public Purpose, the Court Grants the Defendants'
     Motion for Summary Judgment**[8]

        The plaintiffs allege that there was no valid purpose for the exercise of eminent domain

over the Skyland properties.  *See generally*, 3d Am. Compl; Proposed 4th Am. Compl.; Pls.'

Opp'n to Defs.' Mot. to Dismiss.  The defendants, citing the current "blight[ed], underutilized

and crime-ridden" conditions, "high unemployment rates" and likelihood "that the redeveloped

area will create new jobs and tax revenues for the District," vigorously disagree.  *See* Defs.' Mot.

to Dismiss at 14.

        The court agrees that the District articulated valid public purposes for the exercise of

eminent domain.  First, the Council came to specific conclusions regarding the Skyland

Shopping Center and the surrounding area.  Generally, the Council stated that "communities east

of the Anacostia River, including the areas near the Skyland Shopping Center, have lagged

behind other communities in the District in economic development and have the highest

unemployment rates," and that "the neighborhoods surrounding the Skyland Shopping Center

---

[8]   The court notes that the D.C. Court of Appeals has held, in a substantially similar case, that the public use argument should be "resolved on its merits" and "may not be rejected as a matter of pleading."  *Franco v. Nat'l Cap. Revitalization Corp.*, 930 A.2d 160, 175 (D.C. 2007).  The Superior Court acknowledged this ruling in the Omnibus Order and resolved the issue summarily by noting that, as it was granting a motion for summary judgment, it was addressing the merits and not just the pleadings.  Superior Court Omnibus Order at 8, n.4.  The court agrees with the D.C. Court of Appeals' assessment that a public use argument should be resolved on the merits.  This rule is applied here as the court is treating the defendants' motion as one for summary judgment and has before it the same evidence and documentation that is cited in the Superior Court Omnibus Order, namely the Skyland Act, Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., Ex. 1, and the record and summary of testimony taken by the D.C. Council Committee on Economic Development, Defs.' Mot. to Dismiss, Ex. A ("Committee Report").

remain economically depressed and underserved." Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., Ex. 1 ("Skyland Act") at 1. As to the Skyland Shopping Center specifically, the Council determined that it "is a blighting factor," that the properties are "underused neglected, and poorly maintained," that these "poor conditions . . . have fueled crime and attracted criminal elements." *Id.* The Council further decided that these conditions were "likely to have increased the incidence of crime in the surrounding neighborhoods." *Id.* The Council called Skyland Shopping Center "unsafe," and an "eyesore and nuisance." *Id.* at 2. These determinations provide a solid basis for this court to determine that the takings were "legitimate" and the means were "not irrational." *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 480 (2005) (quoting *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 242-43 (1984) (holding that "[w]hen the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings – no less than debates over the wisdom of others kinds of socioeconomic legislation – are not to be carried out in federal courts")).

Moreover, the Committee on Economic Development took extensive public testimony prior to the vote on the Skyland Act. *See generally* Committee Report. Councilmembers, local residents and community leaders, law enforcement officers, developers, economists and consultants testified. *Id.* at 5-19. Then-Councilmember Chavous "listed a number of organizations that are in support of using eminent domain for the Skyland project, and stated that this support demonstrated that the Skyland project is the one every group in Ward 7 agreed on." *Id.* at 6. The Special Assistant in the Office of the Deputy Mayor for Planning and Economic Development "stated that the community 'has been advocating for [Skyland's] redevelopment for 15 years.'" *Id.* Washington Square Partners, a development consultant to NCRC testified that a new shopping center at Skyland "would include a gain of 233 full-time equivalent jobs and

$56 million in new sales taxes over 20 years." *Id.* at 7.  Individual neighborhood residents such as Vincent Spaulding, president of the Hillcrest Community Civil Association ("HCCA") testified that the project has the total support of the HCCA.  *Id.* at 9.  Neighborhood residents variously describe the Skyland Shopping Center as a "blight and a dredge," *id.*; "unsafe," *id.* at 11; in "terrible disrepair," *id.*; "a community liability," *id.* at 12; and a "burden [and] . . . a disgrace to the community," *id.* at 19.  The police noted they often receive requests from neighborhood residents for extra officers to patrol "the shopping center for illegal dumping, vending, pan handling, public drinking, public urination, and other quality of life issues."  *Id.* at 9, 17.

"Without exception, our cases have defined [the concept of 'public purpose'] broadly, reflecting our longstanding policy of deference to legislative judgments in this field."  *Kelo*, 545 U.S. at 480.  "If the record discloses . . . that the taking will serve an overriding public purpose and that the proposed development will provide substantial benefits to the public, courts must defer to the judgment of the legislature."  *Franco v. Nat'l Capital Revitalization Corp.*, 930 A.2d 160, 174 (D.C. 2007).  The wealth of evidence in this case points to a well-informed vote by the Council to redevelop the Skyland Shopping Center for the public interest.  Neighborhood groups, law enforcement officials, former ANC Commissioners, and others all testified in support of the Skyland Act.  *See generally* Committee Report.  The Superior Court engaged in a similar analysis and summed it up well:

> Given the voluminous record before the Council as to the conditions at the Skyland site, the comprehensive redevelopment plan put forth by NCRC, and the likely economic and blight-reducing benefits, the Court concludes . . . that the Council had a rational basis for its passage of the Skyland Act.

Superior Court Omnibus Order at 13.  This court agrees and grants the defendants' motion for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion to file a fourth amended complaint, denies the plaintiffs' motion to enforce the settlement agreement, grants the defendants' motion to dismiss and grants the defendants' motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of February 2009.

RICARDO M. URBINA
United States District Judge
